J-S16002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.K., MOTHER | : | No. 1957 MDA 2018 |

Appeal from the Decree Entered October 29, 2018
In the Court of Common Pleas of Cumberland County
Orphans' Court at No(s):  56 Adoptions 2018

BEFORE:  OTT, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                                    **FILED APRIL 12, 2019**

A.K. ("Mother") appeals from the decree entered October 29, 2018, in the Court of Common Pleas of Cumberland County, terminating involuntarily her parental rights to her minor daughter, C.B. ("Child"), born in November 2015.[1]  In addition, Mother's counsel has filed a petition to withdraw and brief in accordance with **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  Upon review, we grant counsel's petition to withdraw and affirm the decree.

The orphans' court summarized the facts and procedural history of this matter as follows:

> . . . . [Cumberland County Children and Youth Services ("CYS") first became involved] on June 17, 2017 when [Mother] contacted [CYS] to self-report active cocaine use and to seek assistance.  At

---

[1] On November 21, 2018, the orphans' court entered a decree denying termination as to Child's father, M.B. (Father).  Father did not participate in this appeal.

that time, [Mother] reported that she was unable to care for [Child] because she was using cocaine and about to enter a drug treatment program in California. [Mother's] family was available to care for [Child] for just a short period and, after exhausting other potential resources, [CYS] petitioned for shelter care. [Child] was placed with foster parents through the Families United Network on July 6, 2017 and adjudicated dependent on August 7, 2017 based on [Mother's] unchanged circumstances—at that time, [Mother] had moved from the drug treatment facility in California to a California recovery house.

[Child] has remained with her foster parents since initial placement. By the time of the November 2, 2017 Judicial Conference, [Mother] had returned to Pennsylvania from the [recovery house] in California and was reportedly taking steps toward attempting to meet her Family Service Plan goals [CYS] created for her. At that time, [Mother's] goals were to obtain housing, address parenting skills concerns, and remain drug and alcohol free. However, by the following spring, [Mother] relapsed several times, was unsuccessfully discharged or left against advice from several rehabilitation facilities, failed to maintain contact with [Child], failed to advance her progress in the Family Service Plan, and was incarcerated. [Mother] was arrested and incarcerated [on] April 30, 2018 for retail theft and released in June 2018. . . .

Orphans' Court Opinion, 1/3/19, at 2-3 (footnotes omitted).

On October 8, 2018, CYS filed a petition to terminate Mother's parental rights to Child involuntarily. The orphans' court held a termination hearing on October 24, 2018.[2] At the conclusion of the hearing, the court indicated that

---

[2] The orphans' court appointed separate legal counsel and a guardian *ad litem* to represent Child during the termination proceedings. Child's legal counsel reported to the court that Child "is almost 3 years old, Your Honor, so she does not understand the nature of these proceedings. So her ability to testify and answer questions would most likely not be appropriate in this proceeding." N.T., 10/24/18, at 119; *see In re T.S.*, 192 A.3d 1080, 1089-93 (Pa. 2018) (observing that a child's preferred outcome may be incapable of ascertainment due to his or her young age). Both Child's legal counsel and the guardian *ad*

it would terminate Mother's rights. The court entered a decree memorializing its decision on October 29, 2018. Mother timely filed a notice of appeal on November 26, 2018, along with a concise statement of errors complained of on appeal. On February 6, 2019, Mother's counsel filed a petition to withdraw and **Anders** brief in this Court.

We begin by addressing the petition to withdraw and **Anders** brief. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)) ("'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'"). This Court extended the **Anders** procedure to appeals from decrees terminating parental rights involuntarily in **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992). To withdraw pursuant to **Anders**, counsel must comply with the following requirements:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

_____

*litem* recommended that the court terminate Mother's rights. N.T., 10/24/18, at 121-22.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)).  Counsel must provide this Court with a copy of the letter advising the appellant of his or her rights.  *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for ***Anders*** briefs:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, counsel filed a petition to withdraw and ***Anders*** brief stating that he conducted a review of the record and determined that Mother's appeal is frivolous.  Counsel's brief includes a summary of the facts and procedural history of this case, a list of issues that could arguably support the appeal, and counsel's assessment of why those issues are frivolous, with citations to the record and relevant legal authority.  Counsel also provided this Court with a copy of his letter to Mother, advising her of her right to obtain

new counsel or proceed *pro se*.[3]  Therefore, counsel has complied with the

requirements of **Anders** and **Santiago**, and we may proceed to review the

issues outlined in his brief.  Additionally, we must "conduct an independent

review of the record to discern if there are any additional, non-frivolous issues

overlooked by counsel."  **Commonwealth v. Flowers**, 113 A.3d 1246, 1250

(Pa. Super. 2015) (footnote omitted).

> Counsel's **Anders** brief presents the following issues for our review:
>
> 1. Whether the [orphans' c]ourt abused its discretion and committed an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of [Mother's] parental rights under Section 2511(a) of the Adoption Act, 23 Pa.C.S.A. §2511(a)[?]
>
> 2. Whether the [orphans' c]ourt abused its discretion and committed an error of law in determining it would be in the child's best interest to have parental rights terminated, when it failed to primarily consider the child's developmental, physical and emotional needs and welfare, thus contravening Section 2511(b) of the Adoption Act, 23 Pa.C.S.A §2511(b)[?]

**Anders** brief at 5 (suggested answers omitted).

We address Mother's claims together as they are interrelated.  In doing

so, we apply the following standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest

---

[3] Counsel indicated in his letter that he had enclosed a copy of his petition to withdraw and brief.

unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

> . . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision pursuant to Section 2511(a)(2) and (b), which provides as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

\*\*\*

23 Pa.C.S.A. § 2511(a)(2), (b).

We consider first whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2):

. . . . In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

In its opinion, the orphans' court concluded that Mother is incapable of parenting Child and cannot or will not remedy her parental incapacity pursuant to Section 2511(a)(2). Orphans' Court Opinion, 1/3/19, at 10-11. The court emphasized Mother's drug use, as well as her lack of mental health treatment and stable housing. *Id.* at 9-11. The court stated:

> . . . . [Mother's] drug use history and accompanying unsuccessful treatment programs over the last year-and-[a-]half, and the resulting failure to meet any of her goals, demonstrate that the conditions prompting [CYS] involvement will not be remedied timely. Additionally, these conditions of drug use and failure to obtain housing or mental health treatment leave [Child] without essential parental care, which leaves this Court without any confidence [Mother] can timely remedy these conditions. . . .

*Id.* at 10-11.

Mother challenges the findings of the orphans' court, by asserting that it failed to give sufficient weight to her many attempts at drug treatment and rehabilitation. *Anders* brief at 10. Mother maintains that she was providing appropriate care for Child prior to CYS's involvement, and that, "if given enough time, she would have been able to [] demonstrate to [CYS] and the

- 8 -

Court that she is able to provide a safe, loving environment for her daughter."
*Id.*

Our review of the record reveals no abuse of discretion or error of law by the orphans' court. As noted above, Mother commenced drug treatment programs on multiple occasions, only to relapse or leave against medical advice. CYS caseworker, Megan Webster, testified that Mother attended her treatment program in California from June 21, 2017, until July 19, 2017, and then went to a recovery house in California until September 9, 2017. N.T., 10/24/18, at 8. The recovery house discharged her successfully, after which she "went to the Poconos" for an unspecified length of time before returning to Cumberland County. *Id.* Mother relapsed in December 2017 and returned to the recovery house in California. *Id.* at 9. The recovery house discharged her successfully for a second time on February 20, 2018, and she went to the RASE recovery house in Pennsylvania the next day. *Id.* Mother relapsed in March 2018 and then went to a program called Common Ground, which she left against medical advice in early April 2018. *Id.* Mother began attending Pocono Mountain Recovery but left against medical advice once again on April 10, 2018. *Id.*

Ms. Webster testified that Mother was arrested and incarcerated on April 30, 2018, due to a charge of retail theft. *Id.* She was released in June 2018, and went to the Madison House West recovery house in York, Pennsylvania. *Id.* at 9-10. Mother participated in intensive outpatient treatment at Wellspan Behavioral Health from June 25, 2018, until August 2, 2018, while residing at

Madison House West. *Id.* at 10. Mother completed the program and stepped down to regular outpatient treatment. *Id.* However, she left Madison House West unsuccessfully in August 2018, and moved in with her parents. *Id.* She completed an evaluation at Gaudenzia Outpatient on September 12, 2018, but rescinded her release of information. *Id.* Because of this, CYS did not know the outcome of the evaluation. *Id.* In late September 2018, Mother began attending White Deer Run in Lebanon County, which she yet again left against medical advice. *Id.* She returned to Madison House West, where she remained at the time of the termination hearing. *Id.* Mother admitted during the hearing that she had not "done [] what I need to do" and suggested that Child should live with Father. *Id.* at 114. She planned to attend an additional intensive outpatient program, which would take her six months to complete. *Id.* at 113.

Thus, the record demonstrates that CYS presented clear and convincing evidence to support termination of Mother's parental rights to Child pursuant to Section 2511(a)(2). By the time of the hearing, Mother had spent nearly a year and a half trying to address her drug use, and she had made little if any progress. Mother relapsed as recently as March 2018 and left a treatment program against medical advice as recently as September 2018. It is apparent that she will not be able to demonstrate the sobriety and stability necessary to parent Child safely at any point in the foreseeable future. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court

cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights to Child pursuant to Section 2511(b). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

***In re Adoption of C.D.R.***, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

The orphans' court concluded that terminating Mother's parental rights would best serve the needs and welfare of Child pursuant to Section 2511(b).

- 11 -

Orphans' Court Opinion, 1/3/19, at 12. The court found that Mother remains incapable of caring for Child, and that her relapses resulted in lengthy periods during which she had no contact with Child. *Id.* The court further found that Child is receiving appropriate care in her foster home. *Id.* The court stated, "[Child's] welfare and need for permanency cannot wait for [Mother] to act in [Child's] interests or demonstrate some sign of ability to care for her. This Court therefore concluded that termination was in the best interest of the child." *Id.*

Mother contends, however, that terminating her parental rights would be contrary to Child's needs and welfare because she loves Child, and "wants to prove to everyone that she can provide the care [s]he[4] needs." *Anders* brief at 11. She insists that the orphans' court failed to give sufficient weight to the fact that she cared for Child prior to her involvement with CYS, and that she reached out for assistance with her drug addiction. *Id.* at 11-12. Mother also contends that the court failed to conduct an adequate assessment of the effect that terminating her parental rights would have on Child. *Id.*

We again discern no abuse of discretion or error of law by the orphans' court. Ms. Webster testified that, after returning from California the first time, Mother visited with Child "for a couple months. . . . And then there was kind of a fall off after that." N.T., 10/24/18, at 11-12. These visits occurred weekly

---

[4] Mother's counsel incorrectly identifies Child as a male several times in his *Anders* brief. *See Anders* brief at 6, 11-12, 14. These errors do not impede our review or require us to deny counsel's petition to withdraw. However, we encourage counsel to proofread his briefs more carefully before filing.

- 12 -

from September 2017 until December 2017. *Id.* at 12. From that point on, Mother did not visit with Child at all until June 2018. *Id.* However, "[t]here were times" when Mother called the foster parents to speak to Child. *Id.* at 13. After June 2018, Mother visited with Child "[e]very other week maybe until September 2018." *Id.* Her last visit occurred on September 16, 2018. *Id.* at 12.

Concerning Child's relationship with Mother, Ms. Webster testified only that Child would know who Mother is if she saw her. *Id.* at 15. Ms. Webster did not believe that termination of Mother's rights would harm Child. *Id.* at 44. She reported that Child is "extremely bonded" to her pre-adoptive foster parents. *Id.* at 24.

Child's foster mother, K.F., also testified, but presented a more positive view of Child's relationship with Mother. K.F. testified that Child refers to her as "Mommy" and to her husband as "Daddy." *Id.* at 52-53. Nonetheless, K.F. opined that Child remains bonded with Mother as well. She explained:

> She is bonded to her mother. She likes to see her mother. After I would say March there was a large gap where she didn't have any contact with her mother and she eventually stopped asking for her. She used to -- when the phone would ring, she would ask if it was her mom. Then she started to see her again in June after she got out of prison. So she would see her at her mother's house, [Child's] grandmother's house.

*Id.* at 53.

Finally, the orphans' court heard from Child's legal counsel, who offered his own assessment of Child's relationship with Mother. Counsel reported that,

while Child treats her foster parents as her "mommy and daddy, . . . she also does recognize that she does have another mommy and another daddy." *Id.* at 119. He opined that Child is "fully bonded" and has a loving relationship with her foster family. *Id.* at 119.

Based on the foregoing, the record confirms that CYS presented clear and convincing evidence to support termination of Mother's parental rights to Child pursuant to Section 2511(b). While Child may maintain some emotional attachment to Mother, it is doubtful that this attachment is a necessary and beneficial parental bond, given that Mother has only visited Child sporadically during the last year and a half. *See Matter of Adoption of M.A.B.*, 166 A.3d 434, 449 (Pa. Super. 2017) ("[A] child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended period of time."). Child shares a parental bond with her pre-adoptive foster parents, with whom she has lived since her initial placement in July 2017. Moreover, as discussed above, Mother is incapable of providing Child with appropriate parental care, and preserving Mother's parental rights would serve only to deny Child the permanence and stability to which she is entitled. *See C.D.R.*, 111 A.3d at 1220 ("Clearly, it would not be in Child's best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent.").

Thus, because our independent review of Mother's claims demonstrates that they do not entitle her to relief, and because our review of the record

does not reveal any non-frivolous issues overlooked by counsel, we grant counsel's petition to withdraw and affirm the October 29, 2018 decree.

Decree affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/12/2019